NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WANDY NOVA,** <br><br> Plaintiff, <br><br> v. <br><br> **COMMISSIONER OF SOCIAL SECURITY,** <br><br> Defendant. | Civil Action No. 15-7728 (ES) <br><br> OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is an appeal filed by Wandy Nova ("Plaintiff") seeking review of Administrative Law Judge Joel H. Friedman's ("ALJ" or "ALJ Friedman") decision denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), respectively. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

**I. BACKGROUND**

On April 26, 2012 and May 10, 2012, respectively, Plaintiff filed a Title II application for DIB and a Title XVI application for SSI, due to Human Immunodeficiency Virus ("HIV"), back pain, and depression. (D.E. No. 6, Administrative Record ("Tr.") at 17). In both applications, Plaintiff alleged disability beginning September 25, 2010. (*Id.* at 17). The claims were initially denied on September 19, 2012 and denied again upon reconsideration on March 21, 2013. (*Id.*).

1

Plaintiff subsequently filed a request for a hearing in front of an Administrative Law Judge. (*Id.*). Plaintiff's request was granted, and Plaintiff appeared and testified at a hearing before ALJ Friedman on February 27, 2014 in Newark, New Jersey. (*Id.* at 34). An impartial vocational expert also testified at the hearing. (*Id.* at 17).

On March 21, 2014, ALJ Friedman denied Plaintiff's applications, finding, among other things, that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limited effects of these symptoms [were] not entirely credible." (*Id.* at 25). ALJ Friedman considered treatment notes, objective studies, and Plaintiff's own statements to arrive at his conclusion. (*Id.*). With respect to medical opinions, the ALJ assigned: (i) partial weight to the opinions of agency physicians, who found that Plaintiff could perform light work with simple routine tasks; (ii) partial weight to the opinion of Dr. Benalcazar, who determined that Plaintiff could stand and/or walk up to six hours and sit up to eight hours; and (iii) little weight to the opinion of Dr. Perdomo, who reinforced Plaintiff's complaints of depression and associated functional limitations. (*Id.* at 25-26). ALJ Friedman also considered Plaintiff's age, education, work experience, residual functional capacity ("RFC"), and the testimony of the vocational expert to ultimately conclude that Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (*Id.* at 28).

On May 7, 2014, Plaintiff requested an Appeals Council review (*id.* at 9), which was denied on August 27, 2015 (*id.* at 1-5).

On October 27, 2015, Plaintiff appealed the Commissioner's decision by filing a Complaint with this Court. (D.E. No. 1). The Court received the administrative record on March 17, 2016. (D.E. No. 6). The parties briefed the issues raised by Plaintiff's appeal. (*See* D.E. No. 10, Brief

in Support of Plaintiff filed on June 28, 2016 ("Pl. Mov. Br."); D.E. No. 11, Defendant's Brief Pursuant to Local Civil Rule 9.1 filed on August 12, 2016 ("Def. Opp. Br.")). The matter is now ripe for resolution.

## II. LEGAL STANDARD

### a. Standard for Awarding Benefits

To be eligible for DIB under Titles II and XVI of the Act, a claimant must establish that she is disabled as defined by the Act. *See* 42 U.S.C. §§ 423 (Title II), 1382 (Title XVI). A claimant seeking DIB must also satisfy the insured status requirements set forth in § 423(c). Disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The individual's physical or mental impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Act has established a five-step sequential-evaluation process to determine whether a plaintiff is disabled. 20 C.F.R. § 404.1520(a)(4). If at any point in the sequence the Commissioner finds that the individual is or is not disabled, the appropriate determination is made and the inquiry ends. *Id.* The burden rests on the claimant to prove steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).[1] At step five, the burden shifts to the Commissioner. *Id.*

***Step One.*** At step one, the claimant must demonstrate that she is not engaging in any substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). SGA is defined as significant

---

[1] Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

3

physical or mental activities that are usually done for pay or profit. *Id.* §§ 416.972(a), (b). If an individual engages in SGA, she is not disabled under the regulation, regardless of the severity of her impairment or other factors such as age, education, and work experience. *Id*. § 404.1520(b). If the claimant demonstrates she is not engaging in SGA, the analysis proceeds to the second step.

***Step Two.*** At step two, the claimant must demonstrate that her medically determinable impairment or the combination of impairments is "severe." *Id.* § 404.1520(a)(4)(ii). A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Slight abnormalities or minimal effects on an individual's ability to work do not satisfy this threshold. *See Leonardo v. Comm'r of Soc. Sec*., No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. Nov. 16, 2010).

***Step Three.*** At step three, the ALJ must assess the medical evidence and determine whether the claimant's impairment or combination of impairments meet or medically equal an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). Upon a finding that the claimant meets or medically equals a listing, the claimant is presumed to be disabled and is automatically entitled to benefits. *Id.* § 416.920(d).

When evaluating medical evidence in step three, an ALJ must give controlling weight to, and adopt the medical opinion of, a treating physician if it "is well-supported . . . and is not inconsistent with the other substantial evidence in [the] case record." *Id.* §§ 404.1527(c)(2), 416.927(c)(2). Not inconsistent does not mean that the opinion must "be supported directly by all of the other evidence [i.e., it does not have to be consistent with all the other evidence] as long as there is no other substantial evidence that contradicts or conflicts with the opinion." *Williams v. Barnhart*, 211 F. App'x 101, 103 (3d Cir. 2006). Even where the treating physician's opinion is

not required to be given controlling weight, the opinion is not necessarily rejected and may still be entitled to deference "depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). If there is conflicting medical evidence, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Id.*

*Step Four.* If a claimant is not found to be disabled at step three, the analysis continues to step four, in which the ALJ determines whether the claimant has the RFC to perform her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant lacks the RFC to perform any work she has done in the past, the analysis proceeds.

*Step Five.* In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on her RFC and vocational factors. *Id.* § 404.1520(a)(4)(v).

### b. Standard of Review

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370

F.3d 357, 360 (3d Cir. 2004). While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Regarding the ALJ's assessment of the record, the Third Circuit has stated, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The Third Circuit noted, however, that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

### III. ALJ FRIEDMAN'S DECISION

At step one of the analysis, ALJ Friedman determined that Plaintiff had not engaged in SGA since September 25, 2010—the amended alleged onset date. (Tr. at 19).

At step two, the ALJ determined that Plaintiff suffered from multiple severe impairments: degenerative disc disease, HIV, obesity, carpal tunnel syndrome, and depression. (*Id.*). These impairments were found to "cause more than a minimal limitation in claimant's ability to perform basic work activities." (*Id.*). The ALJ also noted Plaintiff's obesity in light of SSR 02-1p and took

6

it into account when considering its effects on other possible impairments, such as Plaintiff's RFC. (*Id.* at 19-20).

At step three, ALJ Friedman found that Plaintiff did not have an "impairment or combination of impairments that m[et] or medically equal[ed] the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id.* at 20). Specifically, ALJ Friedman found that "there [was] no evidence of [Plaintiff] having disorders of the spine" that met or medically equaled Listing 1.04, and that Plaintiff did not have an impairment or combination of impairments that met or medically equaled Listing 14.08 regarding HIV. (*Id.*). Moreover, the ALJ found that the severity of Plaintiff's mental impairment did not meet or medically equal the criteria of listing 12.04. (*Id.*).

In making this finding, ALJ Friedman considered whether "paragraph B" criteria were satisfied—whether Plaintiff experienced (i) marked restrictions of activities of daily living; (ii) marked difficulties in maintaining social functioning; (iii) marked difficulties in maintaining concentration, persistence, or pace; or (iv) repeated episodes of decompensation, each of extended duration. (*Id.*). In activities of daily living, ALJ Friedman found that Plaintiff had mild restrictions and noted that Plaintiff generally attributed her problems to her physical limitations. (*Id.* at 21). With regard to social functioning and concentration, persistence, or pace, ALJ Friedman found that Plaintiff had moderate difficulties, but that she could "function in a low contact setting involving occasional contact with coworkers and supervisor, and no contact with the general public." (*Id.*). ALJ Friedman found that this was supported by Plaintiff's testimony, which indicated that Plaintiff enjoyed a positive relationship with her children and actively participated in group processes during group therapy. (*Id.*). ALJ Friedman also found that Plaintiff could understand and follow instructions of "moderate complexity." (*Id.*). Lastly, the ALJ determined

7

that Plaintiff experienced "no episodes of decompensation which [had] been of extended duration [because] Plaintiff [had] never been psychiatrically hospitalized and there [was] no other evidence that would support the existence of such an episode." (*Id.*). ALJ Friedman also considered whether "paragraph C" criteria were satisfied, but concluded that the evidence failed to establish the presence of "paragraph C" criteria. (*Id.*).

At step four, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except for the following limitations: Plaintiff could (i) lift and carry twenty pounds occasionally and ten pounds frequently; (ii) stand and walk up to six hours and sit up to six hours; (iii) occasionally do all postural activities except climbing ladders, ropes, and scaffolding; (iv) occasionally use her right dominant upper extremity for grasping and fingering but had full use of the left upper extremity; and (v) perform simple routine tasks in a low contact setting involving occasional contact with coworkers and supervisor, and no contact with the general public. (*Id.* at 22). In making this finding, ALJ Friedman considered Plaintiff's subjective complaints of pain, fatigue, sleeping, hallucinations, and problems lifting and carrying. (*Id.*). However, ALJ Friedman found that treatment notes, objective studies, and Plaintiff's own statements did not fully support her allegations. (*Id.* at 23).

At step five, the ALJ concluded that, based on Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including assembler of small products, collator operator, addresser, document preparer, and cuff folder. (*Id.* at 28).

Accordingly, ALJ Friedman found that Plaintiff was not disabled as defined in the Act, and therefore ineligible for disability benefits. (*Id.*).

8

## IV. DISCUSSION

On appeal, Plaintiff argues that "the substantial evidence in the administrative record establishes entitlement and eligibility for and to" disability benefits. (Pl. Mov. Br. at 9). Plaintiff appeals ALJ Friedman's determinations at steps two, three, four, and five. (*Id.* at 15-25). Specifically, Plaintiff contends that (i) the ALJ failed to consider objectively demonstrated severe impairments (*id.* at 10); (ii) Plaintiff's clear equivalence with the listings is obfuscated by the decision's refusal to combine all severe impairments for a discussion and determination of medical equivalence (*id.* at 12); and (iii) the RFC ignores subjective complaints, objective psychiatric diagnoses, obesity, and a longitudinal psychiatric overview (*id.* at 20).

Plaintiff asks the Court to reverse the Commissioner's final administrative decision. (*Id.* at 9). Alternatively, Plaintiff asks the Court to remand this case to the Commissioner for a new hearing and a new decision. (*Id.*). As set forth below, the Court AFFIRMS the Commissioner's decision and DENIES Plaintiff's appeal.

### a. ALJ Friedman's Determination that Plaintiff's Demyelinating Peripheral Neuropathy and Bilateral S1 Radiculopathy are not Severe Impairments is Supported by Substantial Evidence

Plaintiff argues that at step two of his evaluation, ALJ Friedman failed to include as severe impairments Plaintiff's demyelinating peripheral neuropathy and bilateral S1 radiculopathy, which Plaintiff suffers in both lower back extremities. (*Id.* at 11). Plaintiff claims that the disorders are "objectively proven to exist and acknowledged without contradiction in the decisional recitation of the evidence." (*Id.*). Plaintiff alleges that ALJ Friedman's failure to consider them is error in and of itself and affects findings at steps three and four. (*Id.*). Defendant responds that the "ALJ did not find [the neurological disorders] were, themselves, severe impairments because they represent diagnostic findings rather than additional impairments." (Def. Opp. Br. at 12). Defendant argues that the issue is "a red herring" because "[g]overning law is clear that when an

ALJ finds in a claimant's favor at step two by identifying at least one or more severe impairments even if the ALJ had erroneously concluded that some of Plaintiff's other impairments were non-severe, any error would be harmless." (*Id.* at 13). Thus, because the ALJ had properly accounted for Plaintiff's complaints of low back pain, difficulty walking, and symptoms in her legs and feet, Plaintiff's challenge is without merit. (*Id.*).

The determination of whether a claimant has any severe impairments at step two of the sequential-evaluation process is a threshold test. 20 C.F.R. § 416.920(c); *Newell v. Commissioner of Social Security*, 347 F.3d 541, 546 (3d Cir. 2003) ("The step-two inquiry is a *de minimis* screening device to dispose of groundless claims."). If a claimant has no impairment or combination of impairments which significantly limit the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. 20 C.F.R. § 416.920(c). If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 416.920(d)-(g). A failure to find a medical condition severe at step two will not render a decision defective if some other medical condition was found severe at step two. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.") (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)). However, all of the medically determinable impairments—both severe and non-severe—must be considered at step four when setting the residual functional capacity. *Id.*

To the extent Plaintiff argues that ALJ Friedman failed to find that Plaintiff's demyelinating peripheral neuropathy and bilateral S1 radiculopathy were severe impairments at step two of his analysis, such error is harmless. ALJ Friedman found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in

Plaintiff's RFC finding. Specifically, ALJ Friedman found that Plaintiff suffered severe impairments from HIV, degenerative disk disease, obesity, carpal tunnel syndrome, and depression, then moved on to step three of the analysis and continued on through step five. (Tr. at 19). Moreover, ALJ Friedman accounted for all credible severe and non-severe impairments when determining the Plaintiff's RFC determination for light work with postural limitations, explicitly considering the EMG/NCS findings of Plaintiff's demyelinating peripheral neuropathy and bilateral S1 radiculopathy to support Plaintiff's complaints of low back pain, difficulty walking, and symptoms in her legs and feet. (*Id.* at 23). In conclusion, ALJ Friedman's determination of Plaintiff's severe impairments is supported by substantial evidence.

### b. ALJ Friedman's Determination that Plaintiff's HIV without Opportunistic Infection Did Not Meet or Equal a Listed Impairment is Supported by Substantial Evidence

Plaintiff argues that the ALJ, at step three of his evaluation, failed to "combine all severe impairments and compare the joint effect of all impairments against one of the Commissioner's Listings to determine medical equivalence," and cites the requirements of Listing 14.08(K).[2] (Pl. Mov. Br. at 14-20). Plaintiff argues that she (i) suffers from HIV; (ii) suffers peripheral neuropathy as provided for in 14.08(K); and (iii) manifests a restriction in daily activities or social functioning to a marked degree; thus, Plaintiff is entitled to a presumptive disability determination at step three. (*Id.*). Defendant responds that the ALJ appropriately determined that Plaintiff's HIV without opportunistic infection did not meet or equal the requirements of Listing 14.08(K) because Plaintiff did not experience "repeated manifestations of HIV infection or other manifestations resulting in

---

[2] In Plaintiff's moving brief, Plaintiff cites Listing 14.08(N) rather than 14.08(K); however, subparagraph N was removed from Listing 14.08 in March 2008 and is no longer relevant to the ALJ's decision dated March 21, 2014. *See* 73 Fed. Reg. 14570 (2008). This Court therefore relies on Listing 14.08(K), which provides comparable requirements. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 14.08 (2014).

11

significant, documented symptoms" or "marked limitation in activities of daily living or in social functioning." (Def. Opp. Br. at 15, 20).

When conducting a combination analysis at step three, an ALJ must consider whether a claimant's combination of impairments is equivalent to any listed impairment. *See Burnett*, 220 F.3d at 119. An ALJ fails to adequately consider the combination of the claimant's impairments when the ALJ only makes conclusory statements about the combination of impairments, precluding meaningful judicial review. *See Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 152 (3d Cir. 2008). The ALJ need not, however, "use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505. Thus, an ALJ need not explicitly discuss every applicable listing or combination of impairments at step three, so long as the opinion, read as a whole, indicates that the ALJ considered the proper factors in arriving at his ultimate conclusion. *See id*. Further, "an ALJ fulfills his obligation to consider a claimant's impairments in combination with one another if the ALJ explicitly indicates that he has done so and there is 'no reason not to believe him.'" *Granados v. Comm'r of Soc. Sec.,* No. 13-781, 2014 WL 60054, at *9 (D.N.J. Jan. 7, 2014) (quoting *Morrison ex rel. Morrison v. Comm'r of Soc. Sec.*, 268 Fed. App'x. 186, 189 (3d Cir. 2008)).

Here, while ALJ Friedman's Listing 14.08 combination analysis is confined primarily to one paragraph (*see* Tr. at 20), the analysis therein and the entirety of the ALJ's decision supports a finding that he considered the proper factors in arriving at his ultimate conclusion. Listing 14.08(K) requires repeated manifestations of HIV infection or other manifestations (for example, peripheral neuropathy) resulting in significant, documented symptoms or signs (for example, severe fatigue, fever, malaise, involuntary weight loss, pain, night sweats, vomiting, headache, or insomnia) and one of the following at the marked level: limitation of activities of daily living,

limitations in maintaining social functioning, or limitations in completing tasks in a timely manner due to deficiencies in concentration. 20 C.F.R. pt. 404, subpt. P, app. 1, § 14.08K (2014).

ALJ Friedman determined that Plaintiff "[did] not have an impairment or combination of impairments that me[t] or medically equal[ed] 14.08," and supported it with evidence that Plaintiff has had stable HIV with no opportunistic infections and no side effects from medications. (Tr. at 20). ALJ Friedman also found that although there had been fluctuations in Plaintiff's CD4 count, Plaintiff has had CD4 counts in the 500 and above range with a viral load of less than 20. (*Id.*). Additionally, the ALJ considered in great detail whether Plaintiff experienced any marked limitation in activities of daily living or social functioning, and ultimately determined that Plaintiff suffered only mild to moderate—meaning, less than marked—limitations in functioning.[3] The ALJ pointed to evidence that Plaintiff was able to perform household chores, go outside, use public transportation, and shop. (*Id.* at 20-21). He also found that Plaintiff enjoyed a positive relationship with her children, actively participated in group therapy processes, and was able to understand and follow instructions of moderate complexity. (*Id.* at 21). Plaintiff, therefore, failed to satisfy the requirements of the listing. *See Jones*, 364 F.3d at 504 ("For a claimant to show his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). Hence, assessing the record as a whole, ALJ Friedman's step-three determination that Plaintiff's complaints did not meet or medically equal any of the listings in Appendix 1, including Listing 14.08 regarding HIV, is supported by substantial evidence.

---

[3] Although ALJ Friedman analyzed whether Plaintiff suffered any marked limitations under the paragraph "B" criteria of Listing 12.04 regarding Affective Disorders, this requirement is substantially similar to Listing 14.08(K) on which Plaintiff relies. *Compare* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(B)(1)-(3) (2014) with 20 C.F.R. pt. 404, subpt. P, app. 1, § 14.08(K)(1)-(3) (2014). *See also Cruz v. Comm'r of Soc. Sec.*, 244 Fed. Appx. 475 (3d Cir. 2007) (using the ALJ's Paragraph 12.04 analysis to determine that Plaintiff had failed to satisfy the requirements of Paragraph 14.08 with respect to marked limitations in functioning).

### c. ALJ Friedman's RFC Determination for a Range of Unskilled, Light Work with Limitations is Supported by Substantial Evidence

Plaintiff identifies four deficiencies with the ALJ's assessment of Plaintiff's RFC to perform light work with postural limitations: ALJ Friedman failed to consider Plaintiff's (i) subjective complaints; (ii) objective psychiatric diagnoses; (iii) longitudinal psychiatric overview; and (iv) obesity. (Pl. Mov. Br. at 27). Defendant counters that the ALJ appropriately determined Plaintiff's RFC in accordance with the regulations and based the RFC on an independent analysis of the relevant evidence. (Def. Opp. Br. at 16-17). As more fully set forth below, the Court finds that ALJ Friedman properly considered each of these issues when determining Plaintiff's RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with postural limitations.

#### i. *Subjective Complaints*

Plaintiff argues that ALJ Friedman is mandated to consider an applicant's subjective complaints of pain. (Pl. Mov. Br. at 27). Plaintiff further argues that Plaintiff's "pain [and] fatigue . . . are never discussed in terms of how the decision arrived." (*Id.* at 32). Defendant responds that the ALJ did consider Plaintiff's subjective allegations, which were contradicted by her own testimony, medical evidence, and treatment notes. (Def. Opp. Br. at 18).

While a claimant's subjective complaints must be given serious consideration, *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981), they must also be supported by medical evidence, *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992). An ALJ may reject a claimant's subjective complaints when the ALJ "specif[ies] his reasons for rejecting the[] claims and support[s] his conclusion with medical evidence in the record." *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990).

The Court finds that ALJ Friedman properly considered Plaintiff's subjective complaints of pain, fatigue, and the inability to lift heavy objects, and that his determination is supported by

substantial evidence. ALJ Friedman specifically recognized Plaintiff's complaints of sleep and appetite problems, but rejected them based on treatment notes from Dr. Taylor, which generally showed that Plaintiff had no complaints of sleep or appetite problems. (Tr. at 23). Treatment notes also showed that Plaintiff had stable HIV, no opportunistic infections, no side effects of medication, and a CD4 count and viral load that were normal. (*Id.*). ALJ Friedman also considered objective studies, including x-rays of the cervical spine showing degenerative disc disease, an MRI of the cervical spine showing spondylotic changes, an MRI of the lumbar spine showing disc desiccation but no definite nerve root impingement, and x-rays of the lumbar spine that were negative. (*Id.*). The ALJ accepted some of Plaintiff's subjective complaints in light of the EMG/NCS identifying carpal tunnel syndrome, and limited Plaintiff to only occasional use of the right upper extremity for grasping and fingering. (*Id.* at 26). Moreover, the ALJ explicitly considered Plaintiff's bilateral sensory demyelinating peripheral neuropathy and bilateral S1 radiculopathy, contrary to Plaintiff's allegations, but determined that the studies did not support the extent of the limitations alleged by the Plaintiff. (*Id.* at 23). ALJ Friedman also considered the medical opinions of Dr. Benalcazar, Dr. Vekhnis, and Dr. Perdomo when evaluating the credibility of Plaintiff's subjective complaints, and articulated detailed reasons for the weight he assigned to each. (*Id.* at 25-26).

Accordingly, ALJ Friedman found Plaintiff's subjective complaints not entirely credible. This satisfies the requirements set forth in *Matullo* for rejecting a Plaintiff's subjective complaints, and the Court sees no error in the rejection. In sum, ALJ Friedman's decision adequately indicates the basis for his determination, and the record as a whole supports his conclusion as to Plaintiff's RFC. The RFC is thereby supported by substantial evidence.

15

*ii. Objective Psychiatric Diagnoses and Longitudinal Psychiatric Overview*

Plaintiff argues that ALJ Friedman improperly rejected Dr. Perdomo's report—which provided support for Plaintiff's allegations regarding her mental limitations—as an outlier not consistent with Plaintiff's health records. (Pl. Mov. Br. at 30-32). Plaintiff argues that the report was supported by a treating psychiatrist's diagnosis of "major depressive disorder, recurrent episode, severe, specified as with psychotic behavior." (*Id.* at 31). Plaintiff argues that ALJ Friedman failed to take a longitudinal overview of Plaintiff's condition in light of her long-present psychiatric impairments—such as "plaintiff's visual hallucinations . . . feelings of suicide . . . and social isolation," which led him to improperly reject Dr. Perdomo's report. (*Id.* at 28-32). Defendant counters that the ALJ properly explained his assessment of Plaintiff's mental limitations in his RFC determination. (Def. Opp. Br. at 19). He argues that Dr. Perdomo's opinion was rejected on account of his lack of access to Plaintiff's health records, and that ALJ Friedman properly considered evidence of Plaintiff's longitudinal psychiatric health. (*Id.*).

When evaluating medical evidence in step three, an ALJ must give controlling weight to, and adopt the medical opinion of, a treating physician if it "is well-supported . . . and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If there is conflicting medical evidence, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Morales*, 225 F.3d at 317. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Id.*

The Court finds that ALJ Friedman sufficiently analyzed the evidence in the record and explained his RFC findings, which are supported by substantial evidence. To the extent Plaintiff

argues that ALJ Friedman should have considered specific examples of Plaintiff's psychiatric condition over the long-term—including visual hallucinations, feelings of suicide, wishes to disappear, hopelessness, shame, social isolation, and incestuous rape by her father—the Court is unpersuaded. The ALJ adequately explained that he gave little weight to Dr. Perdomo's opinion because (i) it was inconsistent with Plaintiff's mental health records; (ii) Dr. Perdomo did not have access to Plaintiff's mental health records, which provided a different picture of her depression and related functional limitations; and (iii) Dr. Perdomo failed to provide a function-by-function assessment of Plaintiff's depression and associated functional limitations, and provided only general statements. (Tr. at 25-26).

Moreover, the ALJ noted that Plaintiff's group therapy notes from Trinitas Hospital showed that Plaintiff had no symptoms of perceptual disturbance and actively participated in group processes. (*Id.* at 24). In addition, Dr. Pena-Mejia's medication management reports generally showed that Plaintiff had no significant sleep or appetite complaints, no side effects from medication, no psychosis or hallucinations, and intact cognitive functioning. (*Id.*). The ALJ also considered Social Worker Brown's assignment of a Global Assessment of Functioning ("GAF") score of 65, indicating only mild symptoms, and Plaintiff's report on four occasions in 2013 and 2014 that Plaintiff had experienced no depression, sadness, or lack of energy in the past 30 days. (*Id.*). The Court declines to undertake a de novo review of the Commissioner's decision. Accordingly, ALJ Friedman's decision adequately indicates the basis for his determination, and the record as a whole supports his conclusion as to Plaintiff's RFC. The RFC determination is thus supported by substantial evidence.

### iii. Obesity

Lastly, Plaintiff argues that "[o]besity, found to be a severe impairment at step two is never again mentioned in terms of RFC, at step three, or anywhere else in the decision." (Pl. Mov. Br. at 32). Defendant argues in response that ALJ Friedman considered Plaintiff's obesity in accordance with agency policy by evaluating its effect on other impairments, and explicitly noted it twice in Plaintiff's RFC determination for light work with postural limitations. (Def. Opp. Br. at 20).

Obesity is relevant to an ALJ's determination of disability. Indeed, Social Security Ruling ("SSR") 02-1p, 2002 SSR LEXIS 1 "provide[s] guidance on SSA policy concerning the evaluation of obesity in disability claims filed under titles II and XVI of the Social Security Act." SSR 02-1p, 2002 SSR LEXIS 1, 2002 WL 34686281, at *5 (Sept. 12, 2002). In *Diaz v. Commissioner of Social Security*, the Third Circuit, citing SSR 02-1p, 2002 SSR LEXIS 1, held that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." 577 F.3d 500, 504 (3d Cir. 2009). Meaningful consideration demands that an ALJ "clearly set forth the reasons for his decision." *Id.* (citing *Burnett*, 220 F.3d at 119). Under *Burnett*, an ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505. Instead, "the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Id.*

The Court concludes that substantial evidence supports the ALJ's findings regarding obesity. At step two, the ALJ determined that Plaintiff's obesity constituted a severe impairment and took it into account when considering its effects on other possible impairments. (Tr. at 19-20). In determining Plaintiff's RFC for light work with postural limitations, the ALJ specifically

noted that her obesity had been taken into account. (*Id.* at 26) (noting that Plaintiff was obese and specifying her exact height and weight). The ALJ also restricted Plaintiff to light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except with limitations: Plaintiff can lift and carry twenty pounds occasionally; can stand, walk, and sit up to six hours; and can occasionally do postural activities except climbing ladders, ropes, and scaffolding. (*Id.* at 22). Plaintiff does not explain why her obesity should have resulted in a different RFC; Plaintiff simply states that the ALJ failed to consider it—a contention that, in any event, is refuted by a plain reading of the ALJ's decision. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Consequently, the Court finds that ALJ Friedman's RFC determination is supported by substantial evidence.

## V. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision and DENIES Plaintiff's appeal. An appropriate Order accompanies this Opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**